IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CASEY R. FYKE                                                                    PLAINTIFF

v.                              Civil No. 14-5303

OFFICER GREG DAWSON,
Fayetteville Police Department                                          DEFENDANT

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights case filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds *in forma pauperis* and *pro se.*

Plaintiff is currently incarcerated in the Cummins Unit of the Arkansas Department of Correction. This lawsuit concerns the Plaintiff's arrest on March 31, 2014.  He maintains the arrest was unlawful.  He also maintains he was deprived of a set of keys without due process.

On November 16, 2015, a hearing was held on the Defendant's summary judgment motion (Doc. 18).  The motion is now ready for decision.

**1.  Background**

Plaintiff testified that on March 31, 2014, he drove by 559 North Betty Jo Drive, Fayetteville, Arkansas, and noticed the front door was open.  Thirty-five to forty-five minutes later, he drove by a second time and noticed the door was still open.  Plaintiff testified that he lived at the residence, with roommates, and had been there earlier in the evening.

After he noticed the door open the second time, Plaintiff went into the residence and found the back door was also open.  Plaintiff went upstairs and into a bedroom shared by

Timothy Janssen and Jessica Ward and noticed that the television set owned by Janssen was missing. Plaintiff called 911.

The Defendant was dispatched in response to the call. On Defendant's way to the residence, a roommate of Janssen's, Cybil Ober, called the police and stated that she believed the Plaintiff was responsible for the theft. She indicated she had overheard the Plaintiff talking about stealing from the residence. When Defendant arrived, Plaintiff was inside the residence and explained what he had seen. Plaintiff stated that he believed Cody Schlosser was responsible for the theft because he was leaving on a bus to go to Little Rock at about the same time the Plaintiff noticed the residence was open.

They waited for the residents to return. Plaintiff sat in the patrol car while they waited. When Janssen arrived, Plaintiff told him that when Plaintiff drove by a second time there was a black truck there that took off. Plaintiff, however, testified he was not honest when he spoke to Janssen. Plaintiff testified there was a truck there but it was one of his vehicles being driven by someone else.

Plaintiff testified he showed Defendant the lease agreement listing him as one of the lessees. It was a studio apartment and Plaintiff believed it was a Lindsey and Associates property. Plaintiff also stated that the car he was in was registered to that address. Plaintiff testified he had keys to the apartment and could get into any of the rooms in the house.

Plaintiff testified he had to leave because his mother needed him. With respect to his address, Plaintiff testified he did not live with his grandparents but would stay there a few days at a time. However, he did list their address as his whenever he was required to give his address. Plaintiff testified that he never lists the address he is living at when required to give it.

-2-

Plaintiff testified Defendant harassed him five or six times after that evening.  Defendant kept asking about the television set.    Plaintiff testified that when he went to the police department, at Defendant's request, he admitted he had pawned the television set himself at Instant Money Pawn.  He pawned the television set approximately forty-five minutes before he called the police.  The address on the pawn receipt was to an apartment on South Dunn Avenue.  Plaintiff testified he had keys for several apartments on Dunn.

Plaintiff was arrested and charged with theft of property, theft of services, and residential burglary.  When he was booked in, Plaintiff testified he was asked what he wanted to do with his keys.  They were placed in his property.  Plaintiff testified that when he was released the following day, there was a there was a piece of paper saying his keys had been confiscated.  The keys that were confiscated were to the property on Betty Jo Drive.

According to Plaintiff, the residential burglary charge was dropped after the lease, with his name on it, had been shown to the prosecutor.  Plaintiff was found guilty of theft of property and theft of services.

During the hearing, Plaintiff asked the Court to issue a subpoena for records regarding the Betty Jo Drive property.  A subpoena was issued to Lindsey Management Company.  (Doc. 26).   In response, the Court received a letter stating that there is no record that it provided management services to 559 N. Betty Jo Drive, Fayetteville, Arkansas, or that anyone by the name of Casey Fyke entered into a lease with Lindsey Management.  The subpoena response is being filed as Court's Exhibit 1.

By affidavit, Defendant states the Plaintiff told him that he had stayed at the Betty Jo Drive property on and off several months prior.  *Deft's Ex.* A (Doc. 18-1) at ¶ 4.  Defendant indicates Plaintiff did not tell him about having seen a black truck at the residence.  *Id.*  Further,

-3-

while Plaintiff had a set of keys, Defendants states he overheard the Plaintiff saying that he had taken the keys from Schlosser. *Id.* at ¶ 14.

Defendant was able to rule out Schlosser as a suspect. *Deft's Ex.* A at ¶ 9. When Defendant interviewed the Plaintiff at the police station, after advising him of his rights, he admitted to taking the television set and pawning it. *Id.* at ¶ 10. Defendant obtained a copy of the receipt from Instant Money Pawn that had Plaintiff's name and signature on it. *Id.* at ¶ 11. The receipt listed the Plaintiff's residence as being on Dunn Street. *Id.*

According to Defendant:

at no time that day did Fyke, or anyone else, claim that Fyke was a resident of 559 N. Betty Jo Drive. Further, no one on that day showed me any rental agreement or lease agreement indicating that Fyke was a renter or lessor of the residence at 559 N. Betty Jo Drive.

*Deft's Ex.* A at ¶ 12.

## 2.  Applicable Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 401 (8th Cir. 1995).

The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986);

-4-

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  <u>See McCleary v. ReliaStar Life Ins. Co.</u>, 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).

**3.  Discussion**

Defendant maintains he is entitled to judgment in his favor for a number of reasons.  First, Defendant maintains that under the totality of the facts based on reasonably trustworthy information, he was justified in believing there was probable cause to conclude the Plaintiff committed the offenses for which he was arrested.  Second, he argues that no federal claim exists regarding the keys since Plaintiff had adequate post-deprivation remedies.  Third, Defendant argues he did not violate any clearly established statutory or constitutional rights of the Plaintiff and is therefore entitled to qualified immunity.

Plaintiff denies that there was probable cause for his arrest.  He further maintains his rights were violated when the keys were not returned to him.

**(A).  The Arrest**

"Probable cause exists if the totality of the facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense."  <u>Flynn v. Brown</u>, 395 F.3d 842, 844 (8th Cir. 2005)(internal quotation marks and citations omitted).  "[D]etermining if probable cause exists is not an exact science."  <u>Brodnicki v. City of Omaha</u>, 73 F.3d 1261, 1265 (8th Cir. 1996).

-5-

Plaintiff maintains there is a genuine issue of material fact as to whether probable cause existed to arrest him for the crime of residential burglary. Because he was a resident of the property in question, Plaintiff maintains he could not be charged with residential burglary. Plaintiff does not, nor could he given his convictions, contend he was not guilty of theft of property and theft of services.

Plaintiff's unlawful arrest claim fails as a matter of law for a number of reasons. First, viewing the facts as a whole at the time of Plaintiff's arrest, there is no genuine issue of fact as to whether probable cause existed for the Plaintiff's arrest. Prior to arresting the Plaintiff, Defendant was aware of the following facts: a television had been stolen from the residence; one of the individuals living in the house called the police and stated she believed Plaintiff had committed the theft because she had overheard Plaintiff discussing stealing from the residence; Plaintiff told Janssen about seeing a black truck at the residence but did not tell Defendant about this; Plaintiff admitted having stolen the television set and pawned it; and the pawn receipt listed an address on South Dunn Avenue. I believe a prudent person would have been justified in believing Plaintiff had committed the offenses with which he was charged.

Even if it is assumed that Plaintiff did reside at the Betty Jo Drive residence and should not have been charged with residential burglary, this does not change the fact that probable cause existed for Plaintiff's arrest. See e.g., Davenpeck v. Alford, 543 U.S. 146, 153-56 (2004)(even if the stated basis for the arrest is flawed, so long as probable cause existed for another offense, no unlawful arrest claim exists). The television did not belong to the Plaintiff; he took it; he pawned it; and he admitted that he had stolen the televison. The objective facts clearly provided probable cause to arrest the Plaintiff for theft of property.

AO72A
(Rev. 8/82)

Second, his conviction of the offenses of theft of property and theft of services conclusively determines that probable cause existed for his arrest.  Malady v. Crunk, 902 F.2d 10, 11 (8th Cir. 1990)(conviction of underlying offense is complete defense to civil rights action asserting arrest was without probable cause).

Third, any claim that Defendant lacked probable cause for the arrest would be barred by Heck v. Humphrey, 512 U.S. 477 (1994).  Heck stands for the proposition that no claim challenging the existence of probable cause for arrest can be brought until the conviction has been reversed or set aside. *Id.* at 486-87.  A finding that Defendant lacked probable cause to arrest the Plaintiff would necessarily imply the invalidity of the theft of property and theft of services convictions.  See Williams v. Schario, 93 F.3d 527, 529 (18th Cir. 1996)(per curiam)(false testimony and malicious prosecution claims are *Heck*-barred where they necessarily imply invalidity of conviction or sentence).  These convictions stem from the same actions taken by the Plaintiff.

### (B).  The Keys

Plaintiff's claim based on the fact that the keys were not returned to him does not rise to the level of a constitutional violation.  First, while Defendant took the keys from the Plaintiff and put them into evidence, there is nothing to suggest that Defendant was involved in the decision of whether or not the keys should be returned to the Plaintiff.  See e.g., Ripson v. Alles, 21 F.3d 805, 808-09 (8th Cir. 1994)(§ 1983 liability requires personal or direct involvement in the alleged constitutional violation).  Nor is there any evidence to suggest he is the one who determined the keys should be returned to the residents of the apartment on Betty Jo Drive.

-7-

Second, even if we assume the Defendant was involved in the decision of whether or not the keys should be returned to Plaintiff, the Plaintiff had adequate post-deprivation remedies. "The Due Process Clause of the Fourteenth Amendment provides that '[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law.'" Walters v. Wolf, 660 F.3d 307, 311 (8th Cir. 2011)(quoting U.S. Const. Amend. XIV, § 1). "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." Matthews v. Eldridge, 424 U.S. 319, 332 (1976)(internal quotation marks omitted). "In some circumstances . . . the Court has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." Zinermon v. Burch, 494 U.S. 113, 128 (1990).

When the deprivation is the result of a random and unauthorized act and not pursuant to some established state procedure, the Court has held that "adequate postdeprivation remedies satisfy the requirements of due process." Walters, 660 F.3d at 312 (citations omitted). "The loss of property . . . is in almost all cases beyond the control of the State, in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation." Id.

Thus, even if Defendant intentionally deprived the Plaintiff of the keys, a post-deprivation remedy is all the process Plaintiff is due. See Hudson v. Palmer, 468 U.S. 517, 533 (1984)(intentional deprivation of property does not violate due process when meaningful post-deprivation remedy is available); Sellers by and through Sellers v. Baer, 28 F.3d 895, 902-03 (8th Cir.1994)(Inadvertence, negligence, or even gross negligence is insufficient to state a claim under § 1983). Arkansas law provides Plaintiff with a cause of action for conversion. See e.g,

-8-

Elliot v. Hurst, 307 Ark. 134, 817 S.W.2d 877, 880 (1991)(cause of action for conversion lies where distinct act of dominion is exerted over property in denial of owner's right).

### 4.  Conclusion

For the reasons stated, I recommend that Defendant's motion for summary judgment (Doc. 18) be **GRANTED and this case DISMISSED.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 9th day of May 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-9-

AO72A
(Rev. 8/82)